# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 2, 2012

## IN RE: THE APPLICATION OF KIMYATA IZEVBIZUAIYAMU (Seeking to Qualify as Owner of Number One Bonding Company) v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**Lee V. Coffee, Judge**

---

**No. W2012-00017-CCA-R3-CD  - Filed December 10, 2012**

---

Petitioner, Kimyata Izevbizuaiyamu, appeals the Shelby County Criminal Court's order denying her application to write bail bonds as the owner of Number One Bonding Company. On appeal, petitioner argues that the evidence did not support the court's denial. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

Michael J. Gatlin, Memphis, Tennessee, for the appellant, Kimyata Izevbizuaiyamu.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Thomas Henderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves the denial of petitioner's request to qualify as the owner of her own bail bonding company. Petitioner had been a bail bond agent for other companies for several years and had been previously approved as an agent by the criminal courts of Shelby County.

I. Facts

On August 27, 2007, the Shelby County Criminal Court held a hearing regarding petitioner's qualifications to become a bail bond agent in the court. At the hearing, attorneys and a prosecutor questioned petitioner and other potential bail bond agents. The excerpt of the hearing does not include petitioner's individual answers to the qualifying questions; however, after the hearing, the trial court approved her as a bail bond agent without any objection from the State.

At a September 17, 2009 hearing to qualify as a bail bond agent for a different company, petitioner testified that she had been working at United Bonding Company for about two months. She had previously written bail bonds at Memphis Bonding Company. Petitioner stated that the court had never denied her the authority to write bail bonds. Petitioner further stated that she was familiar with and understood the rules and regulations applicable to bail bond agents.

Petitioner testified at the September 2009 hearing that she filed for bankruptcy in 2005 and that she was discharged in bankruptcy. She also filed for bankruptcy in 2008, but that case was dismissed. Petitioner did not know of any liens against her. On cross-examination, petitioner testified that she had been convicted of several driving offenses a few years before the hearing. The State did not object to the court's qualifying petitioner as a bail bond agent for United Bonding Company.

On May 31, 2011, petitioner again appeared in the criminal court, this time seeking approval to write bonds as the owner of her own bonding company, Number One Bonding Company. Petitioner testified that she knew the rules and regulations governing bail bond agents. She stated that the court had never disqualified or "turn[ed] [her] off" from writing bail bonds since she began several years earlier. Petitioner contracted with Seneca Insurance ("Seneca") to be the surety for her company.

Petitioner again informed the court that she had filed for Chapter 7 bankruptcy in 2005. She said she filed for Chapter 13 bankruptcy in 2007[1] but "dropped" that filing after making payment arrangements with her mortgage company. Petitioner said she paid her debts and did not have any outstanding judgments against her. She again confirmed that she had never been charged with a felony but had been charged with driving on a suspended license.

---

[1] At a previous hearing, petitioner testified that she filed for bankruptcy in 2008. The record is unclear as to which year is correct.

On cross-examination, petitioner admitted that she had a 1996 misdemeanor charge for theft, which the court expunged after her successful completion of diversion. She also had a misdemeanor citation for violation of the vehicle registration law. Petitioner's license had been suspended, revoked, or canceled several times due to unpaid tickets. Petitioner admitted that she filed a chapter 7 bankruptcy in 2001 and a chapter 13 bankruptcy in 2002 in addition to the two bankruptcy cases she mentioned during direct examination. The trial court approved petitioner's application to write bonds as the owner of Number One Bonding Company with Seneca as surety.

On September 22, 2011, the court held a hearing regarding petitioner's application for approval to write bail bonds insured by American Surety Company ("American Surety") because she and Seneca, her previous surety, had a disagreement. According to petitioner, someone from Seneca informed her that Seneca had canceled its contract with her because she did not disclose information about her background, specifically her charges for driving on a suspended license. She said she disclosed the charges in court during the May 31, 2011 hearing and did not think that she had to report the charges to Seneca because they were misdemeanor citations. Petitioner denied taking $30,000 from Geraldine Galloway[2] to start her business and said she signed an affidavit stating that she did not receive any money from Ms. Galloway. Petitioner stated that she started her business with her own money.

On cross-examination, petitioner testified that before the May 31st hearing, Seneca was unaware of her convictions for theft of property and driving on a suspended license. She said that American Surety was aware of her convictions, and they "did not have a problem" with them.

Petitioner stated that she knew Ms. Galloway from writing bail bonds through Ms. Galloway's bonding company, Nationwide Bail Bonding ("Nationwide"), but petitioner did not work for Ms. Galloway's company. Petitioner explained, "If a bond is not approved through my supervisor, we have the option to take that bond to another company owner[.]" Petitioner wrote "[m]aybe three or four bonds over the course of a year" for Nationwide. Petitioner recalled that in March 2011, Ms. Galloway asked to meet her at a Target store to discuss petitioner's opening a bail bonding company in her own name for Ms. Galloway. Petitioner said Ms. Galloway told her "everything would be paid for by [Ms. Galloway] - the office - the collateral - everything [would] be put up by [her]." Ms. Galloway further told petitioner that she would pay her "just like a company owner." Petitioner told Ms. Galloway she would think about the offer. Petitioner said she did not accept the offer because she wanted her own company in her own name, and she did not "want to be attached to a partner

---

[2] The State's brief states that Ms. Galloway was the owner of Nationwide Bail Bonding. The State indicated during cross-examination of petitioner that Ms. Galloway is a convicted felon.

. . . for any reason." Petitioner stated that, after the conversation in the Target parking lot, she did not answer any more of Ms. Galloway's telephone calls. She likewise did not have any contact with any of Ms. Galloway's associates.

Petitioner further testified that she opened her own bail bonding company on May 31, 2011. Prior to contracting with Seneca, petitioner had found American Surety through an internet search and contacted them. Petitioner and American Surety eventually entered into a contract. However, American Surety later canceled the contract because petitioner did not secure sufficient collateral and did not file the appropriate paperwork. Petitioner then contracted with Seneca to be the surety company for her bonds, but Seneca later canceled the contract. After Seneca terminated the contract with petitioner, she attempted to contract with other surety companies, but they all denied her requests due to a rumor that she was involved with Ms. Galloway. Petitioner again contacted American Surety and spoke with Michael Whitlock. She said that Mr. Whitlock was not concerned about the rumors circulating about petitioner because he had worked with Nationwide and knew the rumors were untrue. Petitioner denied meeting Mr. Whitlock through Ms. Galloway. She further denied financing any vehicles for Ms. Galloway and denied helping Ms. Galloway purchase a Bentley.

Upon questioning from the court, petitioner affirmed that she had not taken any money and would not take any money from Ms. Galloway or Nationwide to start her company. Petitioner estimated that it would cost $25,000 to open her bonding company. She stated that she had "free and clear" property that she was going to use as collateral to start her company.

Michael Whitlock with American Surety Company testified that he was willing to "stand behind" petitioner. He stated that he did not have any problems with Nationwide and that Nationwide paid their forfeitures on time.

On cross-examination, Mr. Whitlock testified that he knew Ms. Galloway was a convicted felon. He stated that the law prohibiting convicted felons from writing bail bonds for profit confused him because the State had just renewed Ms. Galloway's license. He further stated, "I don't have any problems with convicted felons if they've done their time and they're back to being a functioning member of society, and they have a license to write bail bonds, and they . . . meet our other qualifications." Mr. Whitlock admitted hearing the prosecutor say that convicted felons "'shall not directly or indirectly receive any benefit from the execution of any bail bond'" during bail bond qualification hearings. Mr. Whitlock testified that he was at the hearing where the prosecutors brought out the fact that Ms. Galloway was an unindicted co-conspirator in a drug cartel case. When asked if he had a problem with someone who had used her bail bonding business to launder money for a drug cartel writing bonds, Mr. Whitlock answered, "To me, she's a licensed bail agent. I don't know if she was convicted on those charges or not, honestly." Mr. Whitlock said Nationwide

complied with their contract, did not have any consumer complaints, and "took care" of their forfeitures, clients, and business.

Mr. Whitlock stated that petitioner found his company using the internet and contacted him to discuss a contract. He denied that petitioner introduced herself to him as a friend of Ms. Galloway. He said that he did not recall the number of times he spoke with petitioner on the telephone but said that they only met in person once, the night before the September 22nd hearing. At that meeting, they did not discuss Ms. Galloway, and petitioner did not tell him what, if any, contact she had with Ms. Galloway.

Mr. Whitlock stated that in 2010, he and petitioner first reached an agreement about his company's insuring the bonds that petitioner wrote. He said petitioner was slow to get qualified to write bail bonds as a company owner. He further said that after a certain time, his company closed files if they were not doing anything with the contract, and that is what happened in petitioner's case. Petitioner had recently called American Surety again, and they entered into a new contract. Mr. Whitlock stated that petitioner told him that she was calling his company because Seneca had canceled her contract with them.

Mr. Whitlock stated that he did not ask petitioner if she had any convictions because he conducted a criminal background search of petitioner, and the search did not reveal any convictions. Mr. Whitlock testified that petitioner originally told him that she was unsure why Seneca canceled her contract and that she surmised it was because of rumors of her being involved with Ms. Galloway. Mr. Whitlock did not discover petitioner's conviction for theft of property or that Seneca had canceled its contract with petitioner because of the conviction until the night before the hearing at which he was testifying.

Mr. Whitlock testified that he met with Ms. Galloway the day before the hearing. On redirect examination, Mr. Whitlock testified that his relationship with Ms. Galloway was "strictly business," and his company still had an outstanding four million dollar liability that they were "running off on the Nationwide contract since it was closed down." Mr. Whitlock stated that he met with Ms. Galloway and petitioner on the same day because he did not live in Memphis, and he tried to see every agent he could while he was there. On recross-examination, Mr. Whitlock testified that petitioner did not tell him that Ms. Galloway had approached her about setting up a bail bond company.

On September 28, 2011, the trial court held another hearing, at the request of the parties, so that Mr. Whitlock could clarify his testimony from the September 22nd hearing. At the hearing, Mr. Whitlock testified, contrary to his prior testimony, that when he met with Ms. Galloway, he and Ms. Galloway discussed petitioner. He said they discussed petitioner for approximately two minutes out of their hour and a half conversation. Mr. Whitlock told

Ms. Galloway that he was going to be contracting with petitioner, and Ms. Galloway "had some comments in response to [Mr. Whitlock's] saying that [he] was going to contract [petitioner]."

On cross-examination, Mr. Whitlock testified that Ms. Galloway told him that she did not think it was in American Surety's best interest to contract with petitioner. He stated that after petitioner contacted him the first time, he asked Ms. Galloway if she had heard of petitioner. He said Ms. Galloway never did anything to help petitioner enter into the contract with American Surety.

After taking the matter under advisement, the Criminal Court of Shelby County, sitting en banc, entered an order denying petitioner's application for approval to write bail bonds as the owner of Number One Bonding Company that were insured by American Surety. Even though the court had approved petitioner on May 31, 2011, to write bail bonds with Seneca as surety, the court found that petitioner was "unsuitable to be entrusted yet again with the privilege of writing bonds in Shelby County." The court further found that petitioner betrayed the trust of the court and showed an inability to be trusted with court documents. On appeal, petitioner challenges the court's denial.

## II. Analysis

Petitioner argues that the evidence did not support the trial court's denial. On appeal, this court conducts a de novo review of a trial court's denial of a bond agent's application for approval. Tenn. Code Ann. § 40-11-125(d) (2010). "Usually, the findings of fact made by the trial court are presumed to be correct unless the evidence contained in the record preponderates against these findings." *In re Petition of Danny Blankenship Bonding Co.*, No. 01-C-01-9505-CR-0013, 1996 WL 374111, at *1 (Tenn. Crim. App. July 5, 1996).

The record shows that petitioner repeatedly lacked candor with the court and the surety companies with which she conducted business by not being immediately forthcoming about her prior criminal convictions. Petitioner did not tell the court about her theft charge until after the prosecutor cross-examined her regarding it. In addition, she did not disclose her criminal history to Seneca and waited until the day before her September 22nd hearing to advise American Surety about it.

The trial court expressed concern about petitioner's relationship with Ms. Galloway, whose authority to write bonds had been revoked. The evidence at the hearings showed that petitioner contacted Mr. Whitlock and entered into a contract to write bonds insured by American Surety. Petitioner did not complete the requirements of the contract, and American Surety canceled the contract. Mr. Whitlock told Ms. Galloway about petitioner's application.

The trial court apparently concluded that after the court revoked Ms. Galloway's authority to write bail bonds, she solicited petitioner to start a bonding business in her name as a front for Ms. Galloway. Petitioner testified that she did not accept Ms. Galloway's offer to start a bonding business. However, approximately two months after she met with Ms. Galloway to discuss starting a bail bonding business, petitioner filed an application to write bonds as the owner of Number One Bonding Company, with Seneca as a surety. After Seneca canceled its contract with petitioner because of her lack of candor about her criminal history, Mr. Whitlock, acting for American Surety, agreed to contract with petitioner again. At this time, American Surety still had a contract with Nationwide Bonding. Ms. Galloway advised Mr. Whitlock that it was not in his best interest to contract with petitioner. After hearing this evidence, the court expressed "extreme reservations" about whether Ms. Galloway would actually run petitioner's company. The court stated that the evidence "create[d] an inference that [did] not . . . pass the smell test."

In conducting our de novo review, we conclude that petitioner's lack of candor supports the trial court's denial of approval to write bonds for the court. Moreover, the evidence presented at the hearing supports the trial court's concern that petitioner was seeking to write bonds as the owner of Number One Bonding Company only as a front for Ms. Galloway, whose authority to write bail bonds the court revoked. The trial court considered the facts of the case before it and reached a decision supported by the evidence. The evidence supports the trial court's order denying petitioner's application for approval to write bail bonds insured by American Surety. Accordingly, we affirm the judgment of the trial court.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE